IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA )
)
v. )
) Case No. 1:10cr277
CHARLES A. JENKINS, JR., )
)
Defendant. )

## MEMORANDUM OPINION

In this 26 U.S.C. § 7201 tax evasion prosecution, the conduct alleged in the Indictment fits within both § 7201, the general tax evasion statute which carries a five-year maximum sentence, and 26 U.S.C. § 7206(5), the statute expressly prohibiting false statements in connection with offers-in-compromise which carries a three-year maximum sentence. The defendant seeks the Indictment's dismissal on the ground that the government is precluded from charging the defendant for tax evasion under § 7201 where the alleged conduct fits also within the lesser offense of making false statements in connection with an offer-in-compromise under § 7206(5).

For the reasons that follow, the defendant's motion fails; in the circumstances of this case, the Title 26 statutory scheme reflects Congress's intent to confer discretion on the government to choose to indict under either § 7201 or § 7206(5).

I.

Defendant, Charles A. Jenkins, Jr., is a resident of Fairfax Station, Virginia. Indictment ¶ 1. During the pertinent time period, Jenkins was either the owner and operator of an electrical contracting business called Jenkins Electrical Contracting, Inc. ("Jenkins Electrical"), or a self-employed general contractor involved in the renovation of real property. *Id.*

On July 27, 2010, Jenkins was indicted on one count of tax evasion, in violation of § 7201, for making false statements and concealing assets. *Id.* ¶ 2. Specifically, the Indictment alleges that Jenkins was obligated to pay a tax penalty, known as the Trust Fund Recovery Penalty, because Jenkins Electrical failed to pay payroll taxes for the second quarter of 1998 through the first quarter of 2000. *Id.* Rather than pay the tax penalty, the Indictment alleges that Jenkins committed three acts of evasion between February 6, 2002 and July 29, 2004. First, on February 6, 2002, Jenkins incorporated a general contracting business known as JDI, Inc. in the name of a nominee. *Id.* ¶ 2a. Second, on February 8, 2002, Jenkins submitted an offer-in-compromise to the Internal Revenue Service ("IRS").[1] In his Form 433-A, submitted with his offer-in-compromise, he failed to disclose that he owned a residence in Fairfax Station and two rental properties in Fairfax and Alexandria, Virginia. *Id.* ¶ 2b. Jenkins also falsely claimed that he had no personal assets. *Id.* Third, on July 29, 2004, Jenkins submitted another offer-in-compromise to the IRS. On this occasion, in his Form 433-A, Jenkins failed to disclose that in February 2002 he transferred ownership of his Fairfax Station residence and his two rental properties for less than their actual value. *Id.* ¶ 2c. He also failed to disclose ownership of a 2004 Dodge Ram truck. *Id.* Finally, he falsely claimed that he had no income, employment or otherwise, and no personal assets. *Id.*

---

[1] A taxpayer's offer-in-compromise, if accepted by the IRS, is a taxpayer's formal offer to the IRS to settle the taxpayer's tax liabilities for less than the full amount owed. Absent special circumstances, an offer will not be accepted if the IRS believes that the liability can be paid in full as a lump sum or through a payment agreement. Generally, the IRS will accept an offer-in-compromise in three situations: (i) there is reasonable and substantial doubt that the taxpayer can pay the full amount owed; (ii) there is some doubt that the assessed tax liability is correct; or (iii) there are exceptional circumstances such that requiring the taxpayer to pay the full amount would cause an economic hardship or would be unfair and inequitable. A taxpayer files an offer-in-compromise by completing a Form 656, Offer in Compromise. In most cases, the taxpayer is also required to submit a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, which requires the taxpayer to list his or her personal, employment, and financial information. *See* http://www.irs.gov.

## II.

At issue is whether making false statements in connection with an offer-in-compromise is cognizable under § 7201, or whether that conduct is chargeable only under § 7206(5). This is essentially a question of statutory interpretation. And because this issue is not explicitly addressed in the two statutory provisions, or indeed anywhere else in Title 26, the task becomes one of divining Congressional intent based on the statute's structure and purpose, and reliable legislative history, if any exists. Accordingly, proper analysis of this issue begins with an examination of the two statutes in issue to determine whether: (i) the conduct encompassed by the two statutes is coterminous; (ii) the conduct encompassed by § 7206(5) is a complete subset of the conduct covered by § 7201; or (iii) the two statutes cover some common conduct, but each also covers some conduct not covered by the other. This task requires a comparison of the elements of the offenses defined by each statute.

The elements of § 7201[2] and § 7206(5)[3] are readily discernable from the statutory

---

[2] Section 7201 provides:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

[3] Section 7206(5) provides.

> Any person who—
>
> * * *
>
> **(5) Compromises and closing agreements.**—In connection with any compromise under section 7122, or offer of such compromise, or in connection with any closing agreement under section 7121, or offer to enter into

language. To establish a violation of § 7201, the government must prove that the defendant (1) willfully (2) committed an affirmative act constituting an attempted evasion of tax payments, and (3) a substantial tax deficiency existed. *See* 26 U.S.C. § 7201; *United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997). By contrast, to establish a violation of § 7206(5), the government must prove that the defendant (1) willfully (2) in connection with any compromise or offer of such compromise (3) either concealed from the United States property belonging to a taxpayer's estate or withheld, destroyed, mutilated, or falsified any book, document, or record (or made a false statement) relating to the estate or financial condition of the taxpayer. *See* 26 U.S.C. § 7206(5).

A comparison of the offense elements of the statutory provisions reveals that the conduct covered by the two is not coterminous, nor is the range of conduct covered by § 7206(5) a complete subset of the range of conduct covered by § 7201. Rather, it is clear that although the two statutory provisions cover some conduct common to both, each covers some conduct not covered by the other.[4] For example, on one hand, both statutes cover situations where a taxpayer

---

> any such agreement, willfully—
>
> > **(A) Concealment of property.**—Conceals from any officer or employee of the United States any property belonging to the estate of a taxpayer or other person liable in respect of the tax, or
> >
> > **(B) Withholding, falsifying, and destroying records.**—Receives, withholds, destroys, mutilates, or falsifies any book, document, or record, or makes any false statement, relating to the estate or financial condition of the taxpayer or other person liable in respect of the tax;
>
> shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

[4] This situation may be easily illustrated by visualizing two circles, a larger one representing the set of conduct violative of § 7201 and a smaller one representing the set of

willfully fails to list assets (*e.g.*, rental home) or falsely states the amount of assets (*e.g.*, account balance) on Form 433-A for the purpose of creating the false impression that the amount offered in compromise is reasonable. On the other hand, only § 7201 covers acts of tax evasion unrelated to an offer-in-compromise. Similarly, only § 7206(5) covers false statements made in connection with an offer-in-compromise that do not reduce the amount of the compromise settlement. For example, a taxpayer may submit an offer-in-compromise to the IRS by completing Form 656 and Form 433-A.[5] Form 433-A requires the taxpayer to provide his or her name, address, social security number, and employment information. It also requires the taxpayer to identify whether he or she has lived outside of the United States for a period of six months or longer during the past ten years. Form 656 requires the taxpayer to provide personal information and to identify the source of the funds used to pay the tax settlement. A false statement with respect to any of this information would violate § 7206(5) because it would constitute falsifying a document relating to the estate or financial condition of the taxpayer. Yet, the same conduct is not cognizable under § 7201 because providing false personal or employment information to the IRS, or falsely describing the source of the funds used to pay the IRS, is not an affirmative act of evasion.[6]

---

conduct violative of § 7206(5). The two circles intersect with the area within both circles representing conduct violative of both statutes. The two areas not common to both circles represent sets of conduct reached only by one or the other statute. This situation is also described by the following common mathematical notation:
$(X \cap Y \subset X) \wedge (X \cap Y \subset Y) \wedge (X \cap Y \neq \phi)$.

[5] *See supra* p. 2 n.1.

[6] During oral argument, government counsel provided an illustrative example of the type of conduct that falls within the scope of § 7206(5), but is not covered by § 7201. A drug dealer may have an outstanding tax obligation and decide to submit an offer-in-compromise. On the Form 656, the drug dealer may falsely state that the "source of funds" is legitimate business activity, but otherwise fill out the forms accurately and correctly. Under those circumstances,

The fact that § 7201 and § 7206(5) cover different types of conduct, but partially overlap, indicates that Congress intended to provide the government with the discretion to prosecute under either statutory provision where the conduct in issue falls within both provisions. This is so because Congress is appropriately presumed to know that it has enacted provisions proscribing overlapping conduct and where, as here, Congress has said nothing to the contrary, Congress is also appropriately presumed to have intended in these circumstances to confer discretion on prosecutors to choose which of the two provisions should be used to charge the conduct in question. Any other conclusion or presumption would fail to accord the statutory language its plain meaning and, indeed, contradict that language.

Settled federal authority supports this conclusion, holding that overlapping criminal statutes do not necessarily raise constitutional concerns or require courts to interpret the statutes so that any overlapping conduct is cognizable under only one statute. To the contrary, the well-settled rule is that where two criminal statutes overlap, the government retains the discretion to prosecute under either statute, unless Congress manifests a clear intent otherwise.[7] In other

---

the drug dealer could not be prosecuted for tax evasion under § 7201 because there is no affirmative act of evasion or an intent to evade the payment of taxes. Yet, the drug dealer could be prosecuted under § 7206(5) for lying about the "source of funds" because that statute punishes any person who falsifies any document relating to the financial condition of the taxpayer submitted in connection with an offer-in-compromise. *See* Tr. of 9/17/10 Hr'g at 47-48.

[7] *See United States v. Batchelder*, 442 U.S. 114, 123-24 (1979) ("This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecutes [sic] under either so long as it does not discriminate against any class of defendants."); *United States v. Beacon Brass Co.*, 344 U.S. 43, 45-46 (1952) (holding that defendant could be charged for making false statements to Treasury officials under the tax evasion statute or the statute prohibiting false statements to government officials); *United States v. Kenny*, 973 F.2d 339, 342-43 (4th Cir. 1992) (holding that the defendant could be prosecuted for corrupt persuasion of a jury witness under either 18 U.S.C. § 1503, which prohibits obstruction of justice, or 18 U.S.C. § 1512, which prohibits tampering with a witness); *United States v. Hale*, No. 91-5597, 1992 WL 163600, at *3 (4th Cir. Jul. 15, 1992) (holding that the defendant could be prosecuted for transporting stolen motor vehicles in interstate commerce under either 18 U.S.C. § 2314, which prohibits interstate transportation of stolen goods, or 18

words, unless there is evidence to the contrary, the case law reflects that the default rule is that Congress intends to give the government discretion to prosecute under either of two overlapping statutes. This default rule applies even in circumstances where one statute is more narrowly tailored than the other.[8]

Instructive in this regard is *United States v. Noveck*, 273 U.S. 202 (1927), where the Supreme Court addressed whether a defendant could be charged for submitting a false income tax return under either the tax evasion statute or the perjury statute. The defendant there argued that his conduct was not cognizable under the perjury statute because the tax evasion statute repealed the perjury statute with respect to false tax returns. *Id.* at 206. The Supreme Court disagreed. Analyzing the elements of the two statutes, the Supreme Court concluded that the defendant could be prosecuted under either statute because they were distinct offenses; each statute contained an element not found in the other. *Id.* Importantly, the Supreme Court noted that its conclusion was not undermined by the fact that perjury was a felony, whereas the tax evasion offense there in issue was only a misdemeanor. *Id.* at 207. Also significant, as the Supreme Court noted, was that there was nothing in the legislative history of the tax evasion statute that warranted a different conclusion. *Id.*

Similarly, in *United States v. Hughes*, 626 F.2d 619 (9th Cir. 1980), the Ninth Circuit addressed whether a defendant could be prosecuted for converting wild horses to private use under either the general conversion statute, 18 U.S.C. § 641, or the specific conversion provision

---

U.S.C. § 2312, which specifically prohibits interstate transportation of stolen motor vehicles and airplanes); *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1187-88 (4th Cir. 1982) (holding that the defendant could be prosecuted for making false claims against the government under either the false claims statute, 18 U.S.C. § 287, or the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343).

[8] *See Kenny*, 973 F.2d at 342 ("The existence of a more narrowly tailored statute does not necessarily prevent prosecution under a broader statute, so long as the defendant is not punished under both statutes for the same conduct."); *Hale*, 1992 WL 163600, at *3 (same).

in the Wild Free-roaming Horses and Burros Act of 1971, 16 U.S.C. § 1338. The defendant argued that his conduct was only cognizable under § 1338. *Id.* at 623. To resolve the issue, the Ninth Circuit applied the following rule:

> [W]here two statutes, each proscribing some conduct not covered by the other, overlap, a single act may violate both, at least where there is some distinction between the elements of each offense, and the violator may be prosecuted under either.

*Id.* (internal quotation marks and citations omitted). After analyzing the elements of the two statutory provisions, the Ninth Circuit concluded that § 641 required the government to prove both a "property loss" and that the defendant "knowingly converted property of the United States." *Id.* at 624. The government was not required to prove these elements under § 1338. *Id.* Thus, the court held that the elements of the two statutes were sufficiently distinct for the government to prosecute the defendant under either statute. *Id.* The Ninth Circuit also determined that a contrary result was not warranted by the legislative history of the Act, which demonstrated congressional intent to impose stiff penalties for converting animals to private use. *Id.* at 625.

These decisions, including those cited in footnote seven, make clear that the fact that § 7201 and § 7206(5) have different elements means that the government has the discretion to charge under either statute unless there is clear congressional intent to the contrary. Significantly, there is nothing in the text of either statutory provision to indicate that Congress intended to make § 7206(5) the exclusive remedy for conduct that falls within the scope of both provisions. To the contrary, by providing that the sanction for violating § 7201 is "in addition to other penalties provided by law," Congress clearly recognized that § 7201 would overlap with other criminal statutes.[9] Yet, Congress did not include any language in § 7201 expressly

---

[9] *See United States v. Beacon Brass Co.*, 344 U.S. 43, 46 (1952) ("By providing that the

-8-

withdrawing coverage for acts cognizable under § 7206(5), or any other statute.[10] The logical inference is that Congress intended for some acts of tax evasion to be cognizable under multiple statutes.[11]

Moreover, the parties have cited nothing in the legislative history directly addressing whether Congress intended to allow the government to prosecute conduct that falls within the scope of both § 7201 and § 7206(5) under either statute. Jenkins argues that Congress intended to make violations of § 7206(5) cognizable only under that statute because the legislative history shows that Congress deliberately chose to make the penalty for violating § 7206(5) less severe than the penalty for violating § 7201.[12] But the fact that Congress decided to impose different sanctions for § 7201 and § 7206(5) does not mean that Congress intended to make conduct that

---

sanction of s 145(b) should be 'in addition to other penalties provided by law,' Congress recognized that some methods of attempting to evade taxes would violate other statutes as well.").

[10] *See Computer Sciences Corp.*, 689 F.2d at 1187 (holding that submitting false claims to the government could be charged under either the false claims act, 18 U.S.C. § 287, or the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, because nothing in the statutory language of the relevant statutory provisions provided "any evidence of an intent to withdraw from one statute a coverage it obviously has standing alone because of a coverage also afforded by another statute").

[11] It is worth noting that while no other court has addressed the precise issue raised here, other courts have permitted the government to bring § 7201 prosecutions for conduct that also falls within § 7206(5). *See United States v. Miller*, 520 F.3d 504 (5th Cir. 2008); *United States v. Greene*, 239 F.App'x 431 (10th Cir. 2007); *United States v. Thomas*, 2007 WL 4104390 (W.D. La. Nov. 14, 2007); *United States v. Torrance*, 2006 WL 3259116 (D. Conn. Nov. 9, 2006); *United States v. Mousley*, 194 F. Supp. 119 (E.D. Pa. 1961).

[12] The legislative history shows that prior to 1954, the predecessor to § 7206(5) was codified as a misdemeanor. *See* 26 U.S.C. § 3762 (1953). In the bill that became the Internal Revenue Code of 1954, the House of Representatives initially proposed making § 7206(5) punishable by the same penalty that applies to tax evasion, which carries a five-year maximum sentence. *See* H.R. Rep. No. 83-1337, at 512-13 (1954). The Senate agreed with elevating § 7206(5) from a misdemeanor to a felony, but it proposed amending the House proposal to make the offense punishable by a three-year maximum sentence. *See* S. Rep. No. 83-1622, at 145 (1954). The Senate proposal was ultimately adopted. *Id.* at 661.

falls within the scope of both statutes cognizable only under § 7206(5). To the contrary, it simply reflects a legislative judgment that conduct that violates only § 7206(5) is less severe than conduct that violates only § 7201.

In opposition to the result reached here, Jenkins makes three arguments. First, Jenkins argues that because § 7206(5) is a complete subset of § 7201, interpreting § 7201 to cover making false statements in offers-in-compromise renders § 7206(5) statutory surplusage. This argument is unpersuasive because § 7206(5) is not a complete subset of § 7201. As discussed above, the statutes have different elements and each covers some conduct not covered by the other.[13] Thus, giving the government discretion to charge conduct that falls within the scope of both provisions under § 7201 does not render § 7206(5) a nullity because § 7206(5) encompasses additional conduct that § 7201 does not.

Second, Jenkins invokes the canon of statutory interpretation holding that statutes should be read to give meaning to every word used by Congress. *See Clinchfield Coal Co v. Harris*, 149 F.3d 307, 313 (4th Cir. 1998) ("In interpreting a statute, we should strive to give effect to every word that Congress has used."). According to Jenkins, interpreting § 7201 to encompass the conduct proscribed by § 7206(5) reads an entire criminal offense out of the statute. This argument is also unpersuasive because the result reached here does not read § 7206(5) out of Title 26; rather, it simply affords the government the discretion to make a judgment as to whether conduct falling within the scope of both provisions should be charged under one statutory provision or the other.

Finally, Jenkins argues that under well-established federal law, where one congressional enactment contains general and specific provisions criminalizing the same conduct, the specific

---

[13] *See supra* pp. 3-5. In contrast to footnote 4, the standard mathematical notation denoting a complete subset is: $X \subset Y$.

provision is controlling. To support his argument, Jenkins relies chiefly on *Busic v. United States*, 446 U.S. 398 (1980), and *United States v. Percival*, 727 F. Supp. 1015 (E.D. Va. 1990). This reliance is misplaced; both cases are distinguishable and hence neither is contrary to the result reached here. In *Busic*, the defendant received a sentence enhancement under 18 U.S.C. § 924(c) for using a firearm in the commission of a felony. On appeal, the defendant argued that his sentence could not be enhanced under § 924(c), a general enhancement statute, because the predicate felony for which he was convicted, 18 U.S.C. § 111, contained its own enhancement provision. The Supreme Court agreed, holding that "prosecution and enhanced sentencing under § 924(c) is simply not permissible where the predicate felony statute contains its own enhancement provision." *Id.* at 404. The Supreme Court reached this conclusion in large measure because there was a statement in the legislative history suggesting that Congress did not intend for § 924(c) to displace pre-existing enhancement provisions in the criminal code. *Id.* at 405. The Supreme Court also noted that both the rule of lenity and the rule favoring specific statutes over general statutes supported its conclusion. *Id.* at 406. None of these circumstances is present here.

In *Percival*, the defendant was convicted of violating 18 U.S.C. § 922(b)(5) because he failed to record statutorily-required information in connection with the sale of firearms. The criminal penalties pertaining to violations of § 922(b)(5) are set forth in 18 U.S.C. § 924. Specifically, § 924(a)(1) provides that "whoever" violates § 922(b)(5) is subject to a five-year maximum sentence. In contrast, § 924(a)(3) provides that "licensed dealers" who violate § 922(b)(5) are subject to a one-year maximum sentence. The defendant was sentenced to felony punishment under § 924(a)(1). In a motion to set aside the verdict, the defendant argued that, because he was a licensed dealer, he was subject only to the misdemeanor penalties provided in §

924(a)(3). The district court agreed with the defendant, reasoning that a licensed dealer must be punished under § 924(a)(3) because: (i) the plain language of § 924(a)(3) makes that provision applicable to licensed dealers; (ii) the legislative history is ambiguous as to whether § 924(a)(3) applies to violations of § 922(b)(5); and (iii) statutory interpretation principles require the court to resolve ambiguous statutes in favor of lenity. *Id.* at 1017-19.

The defendant's reliance on *Busic* and *Percival* is misplaced. Those cases address the question of penalties and not the question of "whether a prosecutor may elect to charge under the less specific of two applicable statutes." *United States v. Jackson*, 805 F.2d 457, 461 n.4 (2d Cir. 1986) (holding that the government may charge a defendant who forges an endorsement on a U.S. Treasury check under either 18 U.S.C. § 641, the general conversion statute, or 18 U.S.C. § 510, which specifically prohibits forging endorsements on Treasury checks). Moreover, the cases cited by the defendant deal with situations where a specific penalty provision was a complete subset of a general penalty provision. Here, § 7206(5) is not a complete subset of § 7201. Each statutory provision covers some conduct not covered by the other. Under these circumstances, the law is clear that the government retains the discretion to charge under either statute.[14]

Nor is the rule of lenity of any assistance to Jenkins's argument. Application of the rule of lenity is only triggered where there is ambiguity in the statutory language. *See Busic*, 446 U.S. at 406. Here, there is no ambiguous language; both statutory provisions are written in plain language free from ambiguity as to the question presented, and both provisions clearly cover the conduct at issue. Where, as here, this is the case, Congress is sensibly presumed to know that the plain language of the two provisions covers some conduct common to both and some conduct unique to each. Congress is also sensibly presumed to have intended that the plain meaning of

---

[14] *See supra* pp. 6-7.

the provisions would be given its full effect, namely that the common conduct could be prosecuted under either provision at the discretion of the prosecutor.

III.

For the reasons stated herein, the motion to dismiss the indictment must be denied.

An appropriate Order will issue.

Alexandria, Virginia
October 4, 2010

/s/
T. S. Ellis, III
United States District Judge